United States Court of Appeals for the 11th circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th circuit is now open according to law. God save the United States and this honorable court. Good morning. This is Judge Wilson in Tampa. Judge Luck is in Miami and we have three appeals that are scheduled for oral argument this morning. And I see the council are ready for the first appeal. It's Christopher Daniel Stines versus the United States. And Andrew Brown is here for Appellant Stines. Eli Rubin is here for the United States. And Mr. Brown, you may proceed. Good morning. Good morning, Your Honor. Good morning to all the members of the court. May it please the court. My name is Andel Brown on behalf of Christopher Daniel Stines, the appellate. This matter revolves around certain issues, but I believe one of them is very straightforward. There is a section of the that dictates the base level offense and it's either 26 or 14. In this situation, the Department of Probation, the Sentencing Commission, the case law that we reviewed and the facts in this case dictate that the base level of 14 should apply. That was the information relayed to us before sentencing. At sentencing or when the PSI was produced, the probation officer that was preparing it said that based on information from the agent and nothing more than that, that the base level of 26 should apply. We objected to that in a timely fashion and we believe that objection was the right result. The court denied our objection and we believe that was the wrong result. When it comes to what is going on here, we believe that relevant conduct does not include the invoices alleged to be over the span of seven years. They're remote. They are not part the offense alleged for the simple fact, among others, that there is no allegation of exportation of these firearms parts that were purchased. It is not illegal to purchase firearm parts. It is illegal to export anything without permission, including firearm parts. When we addressed the probation officer about whether there was any information that the parts that they were speaking about in the invoice were exported, they admitted to the court that that was outstanding. They did not... Counsel, I tend to agree with you about the prior invoices, so those that were not part of the charge conduct. What I want to focus on is just the 23 parts that were charged in the indictment in this case. As to those, it seems to me that at least one of the main questions is whether this offense as charged, meaning the one in the actual indictment, involved only non-fully automatic guns. So is a trigger itself a non-fully automatic gun or arm? Well, when we look at the parts that are here, they are listed as AR-15 parts and the AR-15 is a non-fully automatic weapon. Well, I understand that. Certainly, if what had been exported was an AR-15, then this would not be a close call. I would agree with you on that. But what we have here is individual parts. So assume with me for the moment that all the parts, all 23, were just triggers. That's it. That's all that was sent were just triggers. Would that fall within what I'll call exception to the general base offense level of 26 for an offense involving only non-fully automatic arms, if it were only triggers? If we take the interpretation that I believe is in line with the congressional intent, as well as when we spoke to the sentencing commission in the case, I would say it does for the simple fact that the components that we're talking about are for non-automatic weapons. The components here, triggers, in your example, your honor, would be components of a non-automatic weapon. Well, there's no doubt that there are components of it, I think, and no one can dispute that. But the question is, or as I read the guideline, the guideline says that the offense involved only dot, dot, dot, not relevant, non-fully automatic arms, and then list those arms. It lists shotgun, rifle, and a couple, and maybe handgun. I think it might be the other one, but there's a few that are listed there. Could a component, one part, be an offense involving an arm? In other words, would it be fair for us to say, an ordinary reading, which is what we give where something's not defined, an ordinary reading to say, this offense involved a non-fully automatic arm, as an example, shotgun, rifle, and handgun? Your honor, if we look at the ordinary reading and we look at the outcome of that ordinary reading, I think it guides us. If we are in a situation where a part, let's say a trigger, is regarded as falling under the higher guideline, you would have a situation where you can have an entire gun, which has all the parts included, which can be disassembled and manipulated in any way that you want to, and that would fall under the lower guideline of 14. And then you would have merely a trigger, and that one trigger would fall under the higher guideline. I think that would lead to an absurd conclusion, and it would go against the congressional intent, and I think what the reading has been by the sentencing commission. What, I mean, even if we, even if the absurdity canon could apply where the plain ordinary language told us one thing, let's assume that we could look at the absurdity canon. How is it absurd to say that a part is different in kind than something that is definitively a non-fully automatic firearm? In other words, a trigger part, an AR-15 part, a trigger can be used in a fully automatic gun. It's not that it can't be used in a gun that is turned into a fully automatic gun, whereas a handgun is not going to be an automatic gun, and a shotgun is not going to be an automatic gun. Well, your honor, what I would say with the little bit of knowledge I have about firearms, handguns can be converted to fully automatic weapons if they are manipulated in certain ways. I believe the same for shotguns may be possible. I'm not an expert in that, but to give one component that characteristic without the other parts that convert it into that, I think goes beyond the plain meaning and understanding of what we're in my understanding being part of. It is part and parcel of what is going on here, and I think- So that sounds right. It seems to me that we've said that, at least in the guideline context, involved generally means including, which I think is consistent with what you said. But if we use that terminology, if we sort of substitute including for involved, wouldn't it read to mean that the offense includes an arm? Not that the arm, not that what's being exported is a part of the arm, but that the offense includes an arm. And I think, your honor, the way I've looked at it is that the components are part of the arm. And that's why when I spoke about the absurdity argument, the components are part and parcel of the arm, because we would have a situation where if you just put them all together, you would reach a totally different conclusion. They're the same parts. There would be no difference in the parts except whether they are all connected to each other or whether they are separate. I don't believe that is the intention of Congress or the intention of the Census and Commission when it comes to this issue. Counsel, before your time expires, may I ask you a question regarding the downward departure? Can you address that issue? How do we have jurisdiction to review that? Certainly. I think in this situation, based on the facts alleged in our brief and our understanding of the law, I think this presents the unique situation where the downward departure would be appropriate. When you look at the national security interest and the safety of the nation and other things like that, that is a very broad and it's not defined here. And I think without specific findings of how that is done, then a downward departure can be available to us. Do you have a case law to support that position, or you're asking us to make this in the first instance? I do not point to any other case law other than what is included in the brief. I don't have it off the top of my head, but I will rely on the brief in that respect. Okay. Thank you, Counsel. Thank you. There's no indication in the record that Mr. Brown at the court didn't understand that it lacked the authority, that it had the authority to depart downwards. Is that right? That is right, Your Honor. Okay. All right. If that completes your argument, Counsel, we'll hear from the government. That does, Your Honor. All right. Mr. Rubin. Thank you, Your Honor. May it please the court. May I address the interpretation of the guidelines first in response to the appellant's argument. The offense includes an arm, was what Mr. Brown said. The offense here includes all of those arms that would be serviced by the weaponry confiscated on August 22nd. Relevant conduct includes all harm that was the object of such acts and omissions. Here, the facts show that Mr. Steins, a gunsmith trying to export 23 weapon parts to Haiti where he lived exclusively, where he operated a business repairing AR-15s, intended to use those weapon parts on two or more weapons. Was there actually a finding of fact, a factual finding by the court as to whether or not Steins exported any weapons other than the 23 parts he was completed guilty to smuggling? Your Honor, the unobjected to facts established by a preponderance of the evidence that Mr. Steins exported the, what I'll call invoice weapon parts. My question is, was there any factual finding made by Judge Martinez? There was no explicit finding of fact. However, I believe based on the district court's statement that Mr. Steins did this over and over again, there's the implicit recognition that he exported these parts. And that's the only logical conclusion because Mr. Steins lived exclusively in Haiti where he operated a business repairing AR-15s. Okay. So we should only consider the 23 weapons parts as his relevant conduct, right? Your Honor, you can focus only on the 23. I believe the facts established the additional parts were exported, but that's not necessary to affirm the sentence in this case. Counselor, if you can address Mr. Brown's point, which I think is an interesting one, which is that it assumes a hypothetical that we don't quite have, but let's assume that we had a completely deconstructed AR-15. So a clearly non-fully automatic weapon. And it included every part that would go into it, but happened to be deconstructed. As I understand it, part of the government's argument that it's one that has a lot of appeal to it is that a part is not an arm for purposes of that first part of the exception. I understand there's a different argument regarding a weapon, but with regard to it being an offense involved only a fully automatic arm, i.e. shotgun, rifle, et cetera, a part is not that and relying on the second circuit and a few other cases for that proposition. That has some appeal to me, but if the fact pattern were that it was a completely deconstructed AR-15 and all that had to be done was you just had to put it all together. It was put part A with part B with part C with part D, and you have your fully automatic gun or non-fully automatic gun. Why would that fall within whatever exception there? Why would the intent of the sentencing commission be that that set of parts wouldn't fall within the exception and would be 26, but that same exact set put together would fall within the exception? I think a deconstructed, a single AR-15 deconstructed would meet the exception because those parts are, based on the evidence, are intended to serve as only one weapon. The harm is the unauthorized proliferation of these defense articles, and here you have eight triggers which necessarily is meant to service eight AR-15s, so I don't believe there's this absurd hypothetical that the appellant references. I do believe an unfortunate consequence of the appellant's interpretation is if you were to have a thousand AR-15s, all of which were missing perhaps a single part, like a trigger, under the appellant's interpretation, that stark amount of weaponry would fall under the exception and receive a much lower base offense level. I would like to add that the appellant has not identified any legal support for the interpretation he put forward in the district court. There is email from the probation officer, but every single court of appeals to decide this guideline has ruled against the appellant's interpretation, and also with regards to the intent of the sentencing commission. The Cerro opinion out of the Second Circuit ruled that ammunition precluded application of the lower base offense level and the exception. The sentencing commission seems to have responded to that opinion by amending the guideline to include ammunition. We see no steps taken by the sentencing commission to amend the guidelines to cater to the appellant's interpretation, so I think that's further evidence that that's without any legal support. Your Honors, um... Would you like to address the, uh, do we have jurisdiction to consider the downward departure argument? Thank you, Your Honor. It is the opinion of the government that this court is without jurisdiction. The district court spent some time articulating his reasoning for denying the downward departure. I don't believe, again, there's any legal support for carving out an exception, and I believe the court is without jurisdiction. If there are no further questions, we rest on our brief and respectfully request that the court affirm the sentence. All right, thank you, Mr. Rubin. Mr. Brown, you have preserved some time for rebuttal. I have. Thank you, Your Honor. Your Honor, in rebuttal, Your Honors, in rebuttal, I would simply point to the fact that Mr. Rubin's arguments, the case law provided, including the Cerro case, all of those were provided to the probation officer who consulted with the sentencing commission in coming back to the court after we filed our pre-PSI to explicitly state that the lower guideline applied. None of these arguments are new. They were made before, and they were rejected when it came to understanding the facts as applied to the 23 parts that we are discussing. In that situation, it has already been decided, and based on the parts, based on the law, based on the communication with the sentencing commission, it was understood that the lower guideline applied. But for the additional alleged relevant conduct, the lower guideline applied. That's what was clear from the PSI. The Cerro case was about ammunition, and we believe that it is a different matter than what we are dealing with here. And it was about parts too, though. It wasn't limited to just ammunition, was it? I don't recall all the facts. My understanding was that it was about ammunition, but I could stand corrected if there's additional information. In regard to the other issue that we have before the court, Your Honors, we would stand on our briefs in regard to that. Other than what I've stated before and what we have stated in our brief, we have no further argument and would stand on what we have written. All right. Thank you, Mr. Brown and Mr. Rubin. That concludes this argument. We'll move to the next case. Thank you all. Good to see you over here. Thank you both.